1
2
3
4
5
6
7
8

**WALTON & WALTON, LLP**
L. RICHARD WALTON (SBN 226703)
  *rwalton@taxtriallawyers.com*
JAVAD NAVRAN (SBN 321159)
  *jnavran@taxtriallawyers.com*
13700 Marina Pointe Drive, Suite 920
Marina del Rey, California 90292
Telephone:  (310) 363-7321
Facsimile:   (310) 464-3057

*Attorneys for Plaintiff*
CLAIRE KIMBLE

9
10
11

# UNITED STATES DISTRICT COURT

## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24

*Left margin: WALTON & WALTON LLP, 13700 MARINA POINTE DRIVE, SUITE 920, MARINA DEL REY, CALIFORNIA 90292*

| | |
|---|---|
| **CLAIRE KIMBLE,** an individual,<br><br>     Plaintiff,<br><br>          v.<br><br>**FAITH MEDIA DISTRIBUTION, LLC**, a California Limited Liability Company; **FAITH MEDIA DISTRIBUTION, INC.**, a California Corporation; **YOLANDA HALLEY**, an individual; **IMANI HALLEY**, an individual; **DOES 1 through 10**, inclusive; and **ROES 11 through 20**, inclusive,<br><br>     Defendants. | Case No.<br><br>**COMPLAINT FOR MONEY DAMAGES AND FOR A TEMPORARY RESTRAINING ORDER**<br><br>**JURY TRIAL REQUESTED** |

25
26
27
28

COMES NOW Plaintiff, Claire Kimble, by and through her undersigned counsel of record, L. Richard Walton, of Walton & Walton, LLP, and for a Complaint against the above-named Defendants, and each of them, alleges the following:

1

**COMPLAINT**

**PARTIES**

1.      Plaintiff Claire Kimble is an individual who resides and is domiciled in the Philippines.  Her business address when this Complaint is filed is 37 Uptown Rd, Unit 20B, Ithaca, NY 14850.  She is married to interested non-party Herbert Kimble.

2.      Defendant Faith Media Distribution, LLC ("Faith Media LLC") is a California limited liability company with its principal place of business (according to California Secretary of State Records) at 10960 Wilsire Blvd, 5th Floor, Los Angeles, California 90024, within the jurisdiction and venue of this Court.  Faith Media LLC operates a film production company, within the jurisdiction and venue of this Court.

3.      Defendant Faith Media Distribution, Inc. ("Faith Media, Inc.", and when referenced together with Faith Media LLC herein, "Faith Media") is a California corporation with its principal place of business (according to California Secretary of State Records) at 9903 S. Santa Monica Blvd, Suite 451, Beverly Hills, California 90212, within the jurisdiction and venue of this Court.  Faith Media, Inc. operates a film production company, within the jurisdiction and venue of this Court.

4.      Plaintiff is informed and believes, and thereon alleges, that Defendant Yolanda Halley is an individual who resides in Beverly Hills, California, within the jurisdiction and venue of this Court.

5.      Plaintiff is informed and believes, and thereon alleges, that Defendant Imani Halley is an individual who resides in Beverly Hills, California, within the jurisdiction and venue of this Court.

6.      Plaintiff is ignorant of the true names and capacities of the Defendants, whether individual, or otherwise, sued herein as DOES 1 through 10, inclusive. Plaintiff therefore sues these defendants by fictitious names and will seek to amend her Complaint to show the true names when ascertained. Plaintiff is informed and believes, and based thereon allege, that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings giving rise to Plaintiff's requested relief.

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

7.      Plaintiff is ignorant of the true names and capacities, whether corporate or otherwise, of defendants sued herein as ROES 11 through 20, inclusive. Plaintiff therefore sues these defendants by fictitious names and will seek to amend her Complaint to show the true names when ascertained. Plaintiff is informed and believes, and based thereon allege, that each of the defendants designated herein as a ROE is legally responsible in some manner for the events and happenings giving rise to Plaintiff's requested relief.

8.      Each of the named Defendants and the ROE defendants herein were at all times herein mentioned the agent and/or employee of each of the other named or ROE co-defendants, and in doing the things hereinafter alleged, each defendant was acting in a managerial capacity and in the course and scope of such agency and/or employment with the permission and consent of said co-defendants and acted with the power to bind these defendants and each of them to the acts of said individuals, said acts having thereafter been ratified by these defendants, and each of them.

9.      Each of the Defendants herein conspired, one with the other, and with full knowledge of Plaintiff's existence and rights, to cause each of the harms complained of herein.

10.      There exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants such that any individuality and separateness between Defendants has ceased, and Defendants are each the alter ego of the other in that Defendants used a corporate entity or entities as a mere shield to avoid personal liability and to promote fraud and injustice.  As such, any claimed entity identity should be ignored, and any veil of protection thereby provided ignored, so as to prevent fraud and injustice herein.

## JURISDICTION

11.      Plaintiff's First Cause of Action arises under 15 U.S.C. §§ 78j(b) & 78aa, and jurisdiction in this Court is therefore proper under 28 U.S.C. § 1331. Plaintiff's remaining Causes are closely related in fact and law to her First, and only

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

3

**COMPLAINT**

1  in the event this Court lacks diversity jurisdiction as set forth below (which it does

2  not) this Court should therefore exercise supplemental jurisdiction over them under

3  28 U.S.C § 1367.

4      12.    A Securities Act claim is subject to nationwide venue and service of

5  process.  (15 U.S.C. § 78aa.)  An action under the Securities Act may be brought

6  where "any act or transaction constituting the violation occurred" or "in the district

7  wherein the defendant is found or is an inhabitant or transacts business, and process

8  in such cases may be served in any other district of which the defendant is an

9  inhabitant or wherever the defendant may be found."  (Id.)  When nationwide service

10  of process is authorized by the governing federal statute, "it becomes the statutory

11  basis for personal jurisdiction, provided that due process is satisfied."  (Peay v.

12  Bellsouth Med. Assistance Plan 205 F.3d 1206, 1210 (10th Cir. 2000)).

13     13.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and

14  29 U.S.C. § 1400(a), in that the Defendants all do business in this District, whether

15  properly or not, and the acts and failures to act complained of herein arise in this

16  District.

17     14.    As a separate and distinct basis for Federal jurisdiction herein, the

18  plaintiff resides and is domiciled outside of the United States, and her place of

19  business is in New York; all defendants are residents of California and the amount in

20  controversy exceeds $75,000, thereby conferring diversity jurisdiction on this Court

21  under 28 U.S.C. § 1332.

22     15.    This action concerns Defendants' acts of fraud against the Plaintiff.

23  Upon information and belief derived from statements made by the Defendants, said

24  agreements were entered into by Defendants while in Los Angeles, California, within

25  the jurisdiction and venue of this Court.  Upon information and belief derived from

26  statements made by Defendants, the statements constituting fraud were made while

27  Defendants were in Los Angeles, California, within the jurisdiction and venue of this

28  Court.

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

**FACTUAL ALLEGATIONS**

**A.    Who and Where: The Parties Meet**

16.    In or about April of 2021, Plaintiff's husband, Herbert ("Herb") Kimble, met Defendant Imani Halley, who goes by "Manny".[1]  Herb and Manny both work in production of movies and television shows.  Thereafter, Manny approached Herb for a loan to fund the production of a motion picture titled "Champagne."  After extensive discussions, Herb sent to Manny's designated entity the sum of $350,000 ("the Champagne Transaction").   Manny personally guaranteed the Champagne Transaction.  A true and correct copy of the Champagne Transaction documentation is attached hereto as **Exhibit "1"**, which is incorporated by reference as if set forth fully herein.

17.    To date, no amount of the funds due under the Champagne Transaction have been repaid, as and for the reasons set forth below.

**B.    How: The Securities Fraud & Misrepresentations to Claire & Herb**

18.    In late 2022, Manny approached Herb and Claire and offered them a much broader investment opportunity in Defendants' filmmaking enterprise.  He made numerous representations, on behalf of Yolanda and Faith Media, that Defendants had a number of successful projects with Black Entertainment Television and Viacom that would secure a larger investment into Defendants' projects.  Specifically, Manny (on behalf of himself and the other Defendants) represented that Viacom and/or Black Entertainment Television (together herein, "Viacom") at that time owed him no less than $1,995,000 for four different productions, with $1,380,000 of that to be paid in less than six months, as follows:

///

---

[1] To avoid confusion, the Parties will be referred to by their first names henceforward; this is done for clarity, not out of any lack of respect for the Court or the Parties.

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

| No. | Title | Amount Due | Paid or Owing? | Due in 6 Months? |
|---|---|---|---|---|
| 1 | Angel | $450,000 | Paid on Execution | N/A |
| | Angel | $225,000 | Paid on Delivery | N/A |
| | Angel | $225,000 | Due 90 days from Airing Date (Already Aired) | Yes |
| 2 | Legacy | $450,000 | Paid on Execution | N/A |
| | Legacy | $225,000 | Paid on Delivery | N/A |
| | Legacy | $225,000 | Due 90 days from Airing Date (Already Aired) | Yes |
| 3 | Dutch 2 | $180,000 | Paid at Execution | N/A |
| | Dutch 2, Theatrical Release | $180,000 | Due at Delivery, *if released theatrically* (not yet delivered) | Yes |
| | Dutch 2, Theatrical Release | $240,000 | Due Quarterly, *if released theatrically* (not yet delivered) | No |
| | *Alternatively* | | | |
| | Dutch 2, Non-Theatrical Release | $70,000 | Retroactively due at execution *if released non-theatrically* | Yes |

6

**COMPLAINT**

| | | | | |
|---|---|---|---|---|
| | Dutch 2, Non-Theatrical Release | $250,000 | Due at Delivery *if released non-theatrically* | Yes |
| | Dutch 2, Non-Theatrical Release | $200,000 | Due at Notice of Non-Theatrical Release *if released non-theatrically* | Yes. |
| | Dutch 2, Non-Theatrical Release | $300,000 | Due quarterly, *if released non-theatrically* | No |
| 4 | Soulmate | $375,000 | Paid at execution | N/A |
| | Soulmate | $750,000 | Due at delivery, with delivery expected in less than six months | Yes |
| | Soulmate | $375,000 | Due quarterly after release. | No |

19.    To be clear, Plaintiff and Herb were presented by Manny with four different entertainment production projects as to which he represented (on behalf of himself and the other Defendants) that money had already been paid by Viacom, and that money was due on each of them as set forth above (together, "the Four Projects").  The Dutch 2 project would either be released theatrically, in which case the total payment from Viacom (including sums already paid) would be $600,000.  If, however, Defendants elected at their discretion to release it non-theatrically, the total payments that Defendants represented would be due from Viacom (including moneys already paid) would be $1,000,000.

20.     Manny represented that the sums due from Viacom as to which there is a "yes" noted in the fourth column above would be due within six months or less of March 14, 2023. Manny represented that the monies due from Viacom as to each of the Four Projects would be paid to Faith Media LLC, and presented Plaintiff and Herb with each of the contracts for the Four Projects as proof of his claims.

21.     Subsequent investigation by Plaintiff has uncovered another, identically-named entity in California that is a corporation—Faith Media, Inc. Since the address used on the Four Projects' contracts with Viacom, which Manny showed to Plaintiff and Herb as security for the investment, use the address for Faith Media, Inc., and not that for Faith Media, LLC, Plaintiff alleges upon information and belief derived from those facts that Faith Media LLC and Faith Media Inc. have commingled interests on the Viacom contracts and on the agreements with Plaintiff herein.

22.     Between January 3, 2023, and March 14, 2023, Manny on numerous occasions represented to Plaintiff and Herb that Faith Media would immediately open a new bank account, upon which Plaintiff would be a co-signatory, into which all of the Viacom monies due on the Four Projects would be deposited, and from which Plaintiff could withdraw those funds to repay her investment. Immediately after receiving $800,000 of Plaintiff's money, Manny began inventing excuses for not opening the bank account, thereby delaying doing so. Upon information and belief derived from their subsequent actions, Defendants did not intend to timely open the joint bank account as Manny promised, so that they could divert to their own uses an April 7, 2023 Black Entertainment Television check for $484,375, made payable to Faith Media LLC, and thereafter all subsequent payments from Viacom on the Four Projects. Manny's repeated statements set forth above, on behalf of himself and the other Defendants, were a lie, when made, with knowledge of their falsity and the intent that Plaintiff would be deceived. She justifiably relied upon Manny's representations based upon the signed contracts he showed her for the Four Projects, and his reputation in the filmmaking industry.

23.     Between January 3, 2023, and March 14, 2023, Manny on numerous occasions represented to Plaintiff and Herb that Plaintiff would be become a 50% Member of Faith Media LLC, with Yolanda to hold the other 50% interest.  Other than the signed "Amendment to Operating Agreement" executed on March 14, 2023, no other steps have been taken to effectuate this promise.  Upon information and belief derived from their subsequent actions, Defendants did not intend to treat Claire as a Member in Faith Media LLC, so that they could divert to their own uses an April 7, 2023 Black Entertainment Television check for $484,375, made payable to Faith Media LLC, and all other subsequent payments on the Four Projects.  Manny's statements repeated statements on behalf of himself and the other Defendants were lies, when made, with knowledge of their falsity and the intent that Plaintiff would be deceived.  She justifiably relied upon Manny's representations based upon the signed contracts he showed her for the Four Projects, and his reputation in the filmmaking industry.

24.     Between January 3, 2023, and March 14, 2023, Manny on numerous occasions represented to Plaintiff and Herb that all funds received from the Four Projects would be used to repay Plaintiff's investment, and that if Plaintiff's investment was not repaid in full by September 14, 2023, Plaintiff would be entitled to take all revenues received by Faith Media from any source in order to repay Plaintiff's investment in full.  Since receiving Plaintiff's monies on March 14, 2023, Defendants and each of them have taken active steps to deprive Plaintiff of any of the promised funds, such that Plaintiff has been repaid none of the monies due to her as of October 31, 2023.  Upon information and belief derived from their subsequent actions, Defendants did not intend to pay Claire a penny of the monies due to her.  Manny's repeated statements on behalf of himself and the other Defendants were lies when made, with knowledge of their falsity and the intent that Plaintiff would be deceived.  She justifiably relied upon Manny's representations based upon the signed

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

9

**COMPLAINT**

1  contracts he showed her for the Four Projects, and his reputation in the filmmaking

2  industry.

3        25.    All of the false promises made by Manny on behalf of himself and the

4  other Defendants were documented by Defendants in two different, signed writings.

5  The first is a purported "Loan Agreement" and personal guarantee dated March 14,

6  2023, and signed by Yolanda and Manny ("the 2023 Loan Agreement").  A true and

7  correct copy of the 2023 Loan Agreement is attached hereto as **Exhibit "2"**, and

8  incorporated by reference as if set forth fully herein.  The second is the purported

9  "Amendment to Operating Agreement" dated March 14, 2023, and signed by

10  Yolanda and Claire ("the Operating Agreement").  A true and correct copy of the

11  Operating Agreement is attached hereto as **Exhibit "3"**, and incorporated by

12  reference as if set forth fully herein.  To be clear, at no point did Claire expect to have

13  any management role whatsoever in Faith Media, LLC, and in fact that entity's

14  Articles of Organization make clear that it is "manager-managed."  A true and correct

15  copy of those Articles are attached hereto as **Exhibit "4"**.  At all times relevant

16  herein, Plaintiff was at risk for both the amount of her investment and the amount of

17  the deferred Champagne loan by Herb that she contributed to this supposed

18  "investment."

19  **C.    The Scheme: Defendants Take Claire's Money—and Then Steal Funds**

20        26.    Plaintiff believed Defendants' claims, because of their repeated oral and

21  written representation of these facts to Plaintiff, and their presentation of executed

22  contracts for the Four Projects—two of which had already been delivered as

23  promised, according to the Defendants.

24        27.    In fact, Plaintiff was misled by Defendants' misrepresentations by and

25  through Manny.  Based upon these misrepresentations, Plaintiff provided Defendants

26  with $800,000 of her personal funds, and forbore collecting the $350,000 owed under

27  the Champagne Transaction.  Given the documents presented and Manny's reputation

28  in the filmmaking community, Plaintiff had no reason to suspect Defendants would

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

1   actively divert and steal monies due to her under the 2023 Loan Agreement and the

2   Operating Agreement—within weeks of her signing their documents and sending

3   them $800,000 of her life savings.

4       28.     All of Defendants' representations were false when made, a fact made

5   painfully obvious by Defendants' subsequent actions after making them and

6   obtaining Plaintiff's monies.

7       29.     In violation of Manny's promises, Defendants and each of them have

8   taken every step possible to avoid repaying the monies due to Plaintiff according to

9   the "guaranteed" terms they presented to Plaintiff before stealing her money, starting

10  with the diversion of the April 7, 2023 BET check to Faith Media LLC for

11  $484,375—written only 24 days after the Defendants promised, verbally and in

12  writing, to give those funds to Plaintiff when received.

13  **D.    Why: Plaintiff Wires $800,000 to Defendants, Which They Still Have**

14      30.     On or about March 14, 2023, Plaintiff wired $800,000 to Defendants,

15  which they still have in their possession.  Not only have they refused to return those

16  monies, they have taken active steps to evade repayment of the sums due.  Those

17  efforts include, without limitation, outright theft and diversion of monies due to

18  Plaintiff under the Operating Agreement and 2023 Loan Agreement.

19      31.     The $800,000 that Plaintiff wired is in addition to the $350,000

20  previously wired by Herb under the Champagne Transaction, which sum was

21  assigned to Plaintiff and was included in the 2023 Loan Agreement.  In total, Plaintiff

22  has been deprived of $1,150,000 of her family's life savings as a result of

23  Defendants' fraudulent scheme.

24      32.     Defendants, and each of them, have failed to perform as promised, and

25  continue to hold Plaintiff's funds, despite demand for the return of said funds.  Unless

26  a temporary restraining order is entered, defendants are likely to dissipate or secrete

27  Plaintiff's funds, causing Plaintiff irreparable harm.

28

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

33.     Many of the verbal representations recited above and made to Plaintiff by Defendants (by and through Manny) between January and March of 2023, were made over interstate telephone and fiberoptic lines between the Philippines, New York, and Los Angeles, California—where Defendant Manny represented to Plaintiff he was located during these conversations, and via cellular phones subject to Federal regulation.  On information and belief derived from the respective geographic locations of Plaintiff and Defendants, documents exchanged between them traveled inter-state between servers located in the Philippines and New York (Plaintiff) and California (Defendants).

34.     Defendants Yolana and Manny were and are, on information and belief derived from statements and writings they prepared and presented to Plaintiff, "controlling persons" of the Faith Media Defendants, within the meaning of section 20 of the Securities and Exchange Act.

35.     Defendants, and each of them, conspired one with the other with the express object of depriving Plaintiff of her monies.  This conspiracy continues to this day.  The first overt act in furtherance of said conspiracy was the misrepresentation by Defendant Manny to Plaintiff that Defendants would repay Plaintiff's monies as soon as monies came in on the Four Projects.

## FIRST CAUSE OF ACTION

**(Securities Fraud, 15 U.S.C. § 10(b) & 17 C.F.R. 240.10b-5—All Defendants)**

As her First Cause of Action, for Securities Fraud, Plaintiff alleges:

36.     Plaintiff incorporates herein by reference Paragraphs 1 through 34 of this Complaint, as though fully set forth herein.

37.     Each of the misrepresentations detailed above by Defendants Manny and Yolanda, individually and as agents of the other Defendants, were made in connection with the purported sale to Plaintiff of a 50% interest in Faith Media LLC. Defendants made false statements to Plaintiff about their intent to utilize funds due to them from Viacom, and as such made material misrepresentations regarding the

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

financial well-being of Faith Media LLC as it pertained to Plaintiff's investment, all in an effort to induce Plaintiff to give them her money.

38.   Defendants Manny and Yolanda made each of the above untrue statements of fact, both for themselves individually and as the agents of the other Defendants, which were all false when made, as set forth above.

39.   Each of the above-stated misrepresentations were material to Plaintiff in inducing her to wire Defendants $800,000 of her life savings, and to forego collecting the $350,000 already owed from the Champagne Transaction.  She would not have done so in the absence of the above-stated misrepresentations.

40.   Plaintiff reasonably relied upon each of the above-stated misstatements, in that Defendants represented themselves as experienced, successful, and honorable participants in the entertainment industry.

41.   Defendants knew these statements were false when made, or acted with reckless disregard of their truth, all with the intent of defrauding Plaintiff out of $800,000 in exchange for her supposed investments in Faith Media LLC, an entity that Defendants never intended to fund with the cash flow they misrepresented to Plaintiff would be going into it within days of her signing documents and sending them money.

42.   Plaintiff has been damaged by Defendants' conduct, and each of them, in an amount to be proven at trial, but in no event less than $800,000.

43.   Plaintiff would not have suffered the loss of her funds to Defendants in the absence of Defendants' misrepresentations, and scheme to defraud her of her money.  The actions of Defendants constituted material misrepresentations, relied upon by Plaintiff to her detriment, without which Plaintiff would never have entrusted Defendants with her funds.

44.   Plaintiff thus: (a) was falsely induced to purchase securities from Defendants; (b) relied upon the false representations by Defendants;  (c)  suffered a

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

1  financial loss that was proximately caused by Defendants, and each of them;  and (d)

2  suffered damages as a result of Defendants' wrongful behavior.

3       45.    As a result of the wrongful acts herein complained of, Plaintiff suffered

4  damages of no less than $800,000, together with other damages subject to proof at

5  trial.

6                           **SECOND CAUSE OF ACTION**

7                              **(Fraud—All Defendants)**

8       As a Second Cause of Action, for Fraud, Plaintiff alleges:

9       46.    Plaintiff incorporates herein Paragraphs 1 through 32 and Paragraph 35

10  of this Complaint, as though fully set forth herein.

11      47.    Defendants Manny and Yolanda, individually and as agents of the other

12  Defendants, made material verbal misrepresentations repeatedly between January 3,

13  2023, and Mach 14, 2023 as set forth above, and in various writings sent to Plaintiff

14  in 2023 (Exhibits 2-3 herein).

15      48.    The above statements were false or misleading when made by

16  Defendants Manny and Yolanda, both for themselves individually and as the agents

17  of the other Defendants, as set forth above.

18      49.    Each of the above statements were made with knowledge, or at the very

19  least reckless disregard, of their falsity at the time made by Defendants Manny and

20  Yolanda, for themselves individually and as agents for the other Defendants.

21      50.    Plaintiff reasonably relied upon each of the above misrepresentations

22  and misleading statements in sending Defendants $800,000 and in forbearing from

23  collecting on the $350,000 already owed.  Plaintiff did so because Defendants were

24  quite prolific with their fibs, and Plaintiff had no reason to believe Defendants were

25  lying to her.

26      51.    Plaintiff is neither a lawyer nor a financier, and had no reason to

27  question Defendants' lies at the time she was being defrauded.

28

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

52.     Defendants Manny and Yolanda's conduct, both while acting on their own behalf and on behalf of the various entities in which they had purported authority, was oppressive, egregious, fraudulent, and wrongful for the following reasons:

    a.  Defendants and each of them knew they were not going to perform the promises made to Plaintiff;

    b.  Defendants enticed Plaintiff to part with her funds in exchange for promises Defendants could not possibly have intended to keep, or had any good faith belief they would keep;

    c.  Defendants operated in a tangle of interrelated entities, a fact not known to Plaintiff at that time;

    d.  Defendants have failed to pay, and continue to refuse to pay, the monies due and owing to Plaintiff, despite reasonable and repeated requests for the same.

53.     In reliance on Defendants' wrongful misrepresentations, Plaintiff transferred $800,000 to Defendants, and forbore collecting on the $350,000 already owed, for which Plaintiff has received nothing in return—other than an "operating agreement" claiming she owns 50% of an entity into which monies have either not been deposited or (in the case of the $484,375 April 7, 2023 check) were deposited and then promptly withdrawn by Defendants solely to their own benefit and without a penny being allocated to Plaintiff.  Defendants have, in sum, gutted Faith Media LLC of any funds, by working with unknown and unnamed co-conspirators.  Plaintiff never gave Defendants permission to treat her funds as their own.  As a result of Defendants' knowing and intentional misrepresentations, Plaintiff has suffered a loss of $1,150,000, together with interest thereon, as well as general and exemplary damages to be proven at trial.

54.     Defendants' conduct is egregious, oppressive, fraudulent, and malicious, and exemplary damages under Cal. Civ. Code § 3294 should be awarded to deter

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

such behavior in the future.  Plaintiff also requests that a constructive and/or resulting trust be imposed upon the money due and owing to her pending resolution of this matter, so that it will not be dissipated.

## THIRD CAUSE OF ACTION

### (Money Had and Received—All Defendants)

As a Third Cause of Action, for Money Had and Received, Plaintiff alleges:

55.     Plaintiff incorporates herein Paragraphs 1 through 32 and Paragraph 35 of this Complaint, as though fully set forth herein.

56.     Within four years last past, Defendants and each of them received $1,150,000 that was intended to be used for the benefit of Plaintiff.

57.     The money was not used for the benefit of Plaintiff.

58.     Plaintiff repeatedly demanded the return of this money, verbally and in writing, but has not been given any of her monies back by Defendants, or any of them—despite repeated promises that they would do so.

59.     Defendants have not given the money to Plaintiff.

60.     Plaintiff is entitled to the money had and received by Defendants, and anyone acting in concert with them or claiming a right to monies due to them.

61.     Plaintiff requests imposition of a constructive and/or resulting trust to secure these funds.

## FOURTH CAUSE OF ACTION

### (Conversion—All Defendants)

As a Fourth Cause of Action, for Conversion, Plaintiff alleges:

62.     Plaintiff incorporates herein Paragraphs 1 through 32 and Paragraph 35 of this Complaint, as though fully set forth herein.

63.     Plaintiff owned money and debts owed in the amount of $1,150,000.

64.     Defendants intentionally and substantially interfered with Plaintiff's money by taking possession of her money under false pretenses.

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

65.     Plaintiff did not and does not consent to Defendants' retention of these sums.

66.     Plaintiff repeatedly demanded return of her monies, verbally and in writing, from Defendants, and each of them, but her monies have not been returned to her—despite repeated promises that Defendants would do so.

67.     Plaintiff was harmed, in an amount of no less than $1,150,000 and to be proven at trial.

68.     Defendants' conduct was a substantial factor in causing said Plaintiff's harm, for without their misrepresentations she would never have suffered the loss complained of herein.

69.     Manny and Yolanda's conduct, both while acting on their own behalf and on behalf of the various entities in which they had purported authority, was oppressive, egregious, fraudulent, and wrongful for the following reasons:

> a.  Defendants and each of them knew they would not perform the promises made to Plaintiff;
>
> b.  Defendants enticed Plaintiff to part with funds in exchange for promises Defendants could not possibly have intended to keep, or had any good faith belief they would keep;
>
> c.  Defendants operated in a tangle of interrelated entities;
>
> d.  Defendants have failed to pay, and continue to refuse to pay, the monies due and owing to Plaintiff, despite reasonable request for the same.

70.     Defendants' conduct was oppressive and malicious, and justifies the imposition of exemplary damages against them as provided for by Cal. Civ. Code § 3294.

71.     Plaintiff requests imposition of a constructive and/or resulting trust to secure these funds.

///

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

**WALTON & WALTON LLP**
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

## FIFTH CAUSE OF ACTION

### (Accounting—All Defendants)

As a Fifth Cause of Action, for Accounting, Plaintiff alleges:

72.     Plaintiff incorporates herein Paragraphs 1 through 32 and Paragraph 35 of this Complaint, as though fully set forth herein.

73.     As a result of the acts complained of herein, Defendants and each of them have received money which is due to Plaintiff, as previously alleged.

74.     The amount of money which is due Plaintiff from Defendants cannot be ascertained by her without an accounting of the funds held by Defendants on Plaintiff's account; Plaintiff is informed and believes that the amount due Plaintiff is at least $1,150,000, but cannot precisely account for what she might be due given the existence of potential secret and undisclosed profits earned upon Plaintiff's funds by Defendants, and each of them, since they have received said funds.

75.     Plaintiff has demanded an accounting of the aforementioned funds and payment of the amount due, but Defendants have failed and refused, and continue to fail and refuse, to render such an accounting and to pay such sum.

76.     Plaintiff is entitled to an accounting between Plaintiff and Defendants for all of Plaintiff's funds received and held by Defendants.

## SIXTH CAUSE OF ACTION

### (Securities Fraud, Cal. Corp. Code § 24401, et seq.—All Defendants)

As her Sixth Cause of Action, for Securities Fraud, Plaintiff alleges:

77.     Plaintiff incorporates herein by reference Paragraphs 1 through 32, and Paragraph 35 of this Complaint, as though fully set forth herein.

78.     Each of the misrepresentations detailed above by Defendants Manny and Yolanda, individually and as agents of the other Defendants, were made in connection with the purported sale to Plaintiff a 50% interest in Faith Media LLC. Defendants made false statements to Plaintiff about their intent to utilize funds due to them from Viacom, and as such made material misrepresentations regarding the

**COMPLAINT**

1   financial well-being of Faith Media LLC, all in an effort to induce Plaintiff to give

2   them her money.

3       79.     Defendants Manny and Yolanda made each of the above untrue

4   statements of fact, both for themselves individually and as the agents of the other

5   Defendants, which were all false when made, as set forth above.

6       80.     Each of the above-stated misrepresentations were material to Plaintiff in

7   inducing her to wire Defendants $800,000 of her life savings, and to forego collecting

8   the $350,000 already owed from the Champagne Transaction.  She would not have

9   done so in the absence of the above-stated misrepresentations.

10      81.     Plaintiff reasonably relied upon each of the above-stated misstatements,

11  in that Defendants represented themselves as experienced, successful, and honorable

12  participants in the entertainment industry.

13      82.     Defendants knew these statements were false when made, or acted with

14  reckless disregard of their truth, all with the intent of defrauding Plaintiff out of no

15  less than $800,000 in exchange for supposed investments in Faith Media LLC, an

16  entity that Defendants never intended to fund as they had promised.

17      83.     Plaintiff has been damaged by Defendants' conduct, and each of them, in

18  an amount to be proven at trial, but in no event less than $800,000.

19      84.     Plaintiff would not have suffered the loss of her funds to Defendants in

20  the absence of Defendants' misrepresentations, and scheme to defraud her of her

21  money.  The actions of Defendants constituted material misrepresentations, relied

22  upon by Plaintiff to her detriment, without which Plaintiff would never have

23  entrusted Defendants with her funds.

24      85.     Plaintiff thus: (a)  was falsely induced to purchase securities from

25  Defendants; (b) relied upon the false representations by Defendants;  (c)  suffered a

26  financial loss that was proximately caused by Defendants, and each of them;  and (d)

27  suffered damages as a result of Defendants' wrongful behavior.

28

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

86.     As a result of the wrongful acts herein complained of, Plaintiff suffered damages of no less than $800,000, together with other damages subject to proof at trial.

## A TEMPORARY RESTRAINING ORDER IS WARRANTED

87.     Defendants operate a veritable blizzard of companies, two of which have identical names, and have demonstrated a level of calculated chicanery that started with the outright theft of nearly $500,000 of what they promised Plaintiff would be her monies—and continues to date despite the filing of this Complaint.  Unless Defendants and each of them, and those acting in concert with them are restrained, they are likely to dissipate or conceal Plaintiff's funds, to Plaintiff's irreparable harm. Until this matter can be heard at a noticed motion, a temporary restraining order is urgently needed to protect Plaintiff's investment and life savings from further loss.

## PRAYER

**WHEREFORE**, Plaintiff prays judgment in her favor and against the Defendants and each of them, jointly and severally, as follows:

**On the First Cause (Securities Fraud)**:

1.     For rescission of the Champagne Transaction, the 2023 Loan Agreement, the Operating Agreement, and any other contract, whether in fact or implied in law or in equity between Plaintiff and the Defendants, and each of them;

2.     For the return and restitution of her $800,000 and $350,000 loan investment;

3.     In the alternative, for monetary damages equivalent to the difference in value between the securities she was promised and what she received, in an amount to be proven at trial;

4.     In the alternative, for the benefit of the bargain she was promised;

5.     For the value of her lost investment returns from the $800,000 she gave Defendants, and the $350,000 loan she contributed towards her purported 50% membership in Faith Media LLC, in an amount to be proven at trial;

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

**On the Second Cause (Fraud):**

6.     For judgment in the amount of $1,150,000, or such other loss as may be shown at trial, together with interest thereon at the legal rate;

7.     For special damages according to proof, but in no event less than $1,150,000;

8.     For general damages according to proof, but in no event less than $2,300,000;

9.     For exemplary damages in an amount to be determined, but in no event less than $10,350,000;

10.    For imposition of a constructive trust in the amount of $1,150,000, as against each of the Defendants and all those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

11.    For imposition of a resulting trust in the amount of $1,150,000, as against each of the Defendants and all those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

**On the Third Cause (Money Had & Received):**

12.    For judgment in the amount of $1,150,000, or such other sum as may be shown at trial, together with interest thereon at the legal rate;

13.    For compensatory damages according to proof;

14.    For consequential damages according to proof;

15.    For an accounting from Defendants of Plaintiff's funds held by them;

16.    For imposition of a constructive trust in the amount of $1,150,000, as against each of the Defendants and all those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

17.    For imposition of a resulting trust in the amount of $1,150,000, as against each of the Defendants and all those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

///

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

1   **On the Fourth Cause (Conversion):**

2   18.   For judgment in the amount of $1,150,000, or such other sum as may be

3         proven at trial, together with interest thereon at the legal rate;

4   19.   For special damages according to proof, but in no event less than

5         $1,150,000;

6   20.   For general damages according to proof, but in no event less than

7         $2,300,000;

8   21.   For exemplary damages in an amount to be determined, but in no event less

9         than $10,350,000;

10  22.   For imposition of a constructive trust in the amount of $1,150,000, as

11        against each of the Defendants and all those acting in concert with them or

12        otherwise claiming a beneficial interest in funds belonging to Plaintiff;

13  23.   For imposition of a resulting trust in the amount of $1,150,000, as against

14        each of the Defendants and all those acting in concert with them or

15        otherwise claiming a beneficial interest in funds belonging to Plaintiff;

16  **On the Fifth Cause (Accounting):**

17  24.   For an accounting from Defendants of Plaintiff's funds held by them;

18  **On the Sixth Cause of Action**

19  25.   For rescission of the Champagne Transaction, the 2023 Loan Agreement,

20        the Operating Agreement, and any other contract, whether in fact or implied

21        in law or in equity between Plaintiff and the Defendants, and each of them;

22  26.   For the return and restitution of her $800,000 and $350,000;

23  27.   In the alternative, for monetary damages equivalent to the difference in

24        value between the securities she was promised and what she received, in an

25        amount to be proven at trial;

26  28.   In the alternative, for the benefit of the bargain she was promised;

27

28

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

29.     For the value of her lost investment returns from the $800,000 she gave Defendants, and the $350,000 loan she contributed towards her purported 50% membership in Faith Media LLC, in an amount to be proven at trial;

30.     For her attorneys' fees incurred, pursuant to Cal. Corp. Code § 25501;

**On All Causes:**

31.     For a temporary restraining order restraining Defendants and each of them, and all those acting in concert with them or claiming a beneficial interest in Plaintiff's funds, from disposing of funds held by each of them in an amount of no less than $1,150,000, pending a hearing on the matter and an accounting for the funds held by Defendants and those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

32.     For a preliminary injunction restraining Defendants and each of them, and all those acting in concert with them or claiming a beneficial interest in Plaintiff's funds, from disposing of funds held by each of them in an amount of no less than $1,150,000, pending a hearing on the matter and an accounting for the funds held by Defendants and those acting in concert with them or otherwise claiming a beneficial interest in funds belonging to Plaintiff;

33.     For prejudgment interest according to law;

34.     For post-judgment interest according to law;

35.     For attorneys' fees;

36.     For costs of suit incurred herein; and

///
///
///
///
///

**COMPLAINT**

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

37.   For such other and further relief as this Court may determine to be proper and just.

Respectfully submitted,

Dated: November 7, 2023          WALTON & WALTON, LLP

By:  /s/ L. Richard Walton
     L. Richard Walton
     *Attorneys for Plaintiff*

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

1

## DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, Claire Kimble, and hereby requests that the trial of the above action be had before a jury of her peers, as to all issues so triable.

Respectfully submitted,

Dated: November 7, 2023          WALTON & WALTON, LLP

By: /s/ L. Richard Walton
L. Richard Walton
*Attorneys for Plaintiff*

**COMPLAINT**

# EXHIBIT "1"

**LOAN AGREEMENT AND PROMISSORY NOTE**

Principal:  $350,000.00

This Loan Agreement, Promissory Note and Security Agreement (the "Agreement") are entered into on January 7, 2022, by and between Champagne, LLC, a Wyoming Limited Liability Company with a principal office in Los Angeles, California (hereinafter "Borrower") on the one hand and Herbert Kimble, a resident of the state of California (hereinafter "Lender") on the other hand, in connection with Lender's provision of funds to Borrower for the motion picture entitled Champagne (the "Picture").   Lender and Borrower (each a "Party," and collectively, the "Parties") agree to be bound by this Agreement.

**WHEREAS**, the Borrower seeks to borrow from Lender and the Lender desires to loan to Borrower Three Hundred Fifty Thousand United States Dollars ($350,000.00 USD)  for the production, completion, delivery, and marketing of the Picture ("Loan"); and

**WHEREAS**, the Borrower and the Lender desire to enter into an agreement whereby the Borrower shall pay to Lender the sum of the Loan and interest according to the terms and conditions herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises made by the parties hereto, the Borrower and the Lender (individually, each a "Party" and collectively, the "Parties") covenant and agree as follows.

**I.    PROMISSORY NOTE**
FOR VALUE RECEIVED, BORROWER promises to repay to the order of Lender, the sum of Three Hundred Fifty Thousand United States Dollars ($350,000.00 USD) together with interest thereon at a rate of fifteen percent (15 %), with full and final payment due on the earliest of  (a) the first date when the Loan amount is available to be repaid out of the gross revenue or proceeds from the Picture or (b) ninety (90) days after the date of the Borrower's receipt of the Loan (the "Maturity Date").

**II.    BORROWER'S REPRESENTATION AND WARRANTY**
The Borrower hereby represents and warrants that this Agreement and the repayment terms herein have been developed in a manner that the Borrower reasonably believes it can pay the Lender without further interruption notwithstanding an additional change in circumstances.

**III.    REPAYMENT**
The Borrower hereby agrees to repay the loan on the Maturity Date.

**IV.    METHOD OF PAYMENT**
Unless otherwise agreed in writing by both parties, Payments shall be made to the Lender via wire transfer to Lender's designated account.

**V.    EARLY PAYOFF**
Borrower will have the option to repay the Loan together with interest thereon at a rate of fifteen percent (15 %) before the Maturity Date without any additional interest and penalties.

**VI.    DEFAULT**
Borrower shall be in default if Borrower fails to pay the principal and any accrued interest from the first monies received for Picture.

Borrower shall have a period of seven (7) Business Days from receipt of written notice thereof from Lender within which to cure any such Event of Default.  At Lender's sole and exclusive option, upon the occurrence of

**LOAN AGREEMENT AND PROMISSORY NOTE**

any other Event of Default, and at any time thereafter, Lender may permit Borrower to cure such Event of Default, but Lender shall have no obligation to do so.

**VII.     SEVERABILITY OF PROVISIONS**

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

**VIII.    NOTICE**

All notices shall be provided to the postal or email addresses identified for each party in the signature line.

**IX.     GOVERNING LAW**

This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the State of California.

The Parties agree to enter into mediation before filing suit against each other for any dispute arising from this Agreement. Parties agree to attend one session of mediation before filing suit. If the dispute is not settled by mediation, the Parties are free to file suit.

**X.     NO EQUITABLE RELIEF**

In the event of a breach of this Agreement by Borrower, the rights and remedies of Lender shall be limited to the right to recover monetary damages, if any, in an action at law and in no event shall Lender be entitled to enjoin or restrain the production or distribution or exhibition of the Picture or any element thereof, or the use, publication, or dissemination of any advertising or marketing issued in connection therewith, and Lender irrevocably waives any right to equitable or injunctive relief.

**XI.     CREDITS**

Borrower shall accord Lender onscreen credits in the form: "Co-Executive Producer Herbert Kimble."

[SIGNATURE PAGE FOLLOWS]

**LOAN AGREEMENT AND PROMISSORY NOTE**

INTENDING TO BE BOUND, the Parties have caused this Agreement to be duly executed as of the day and year first written above.

**BORROWER:** Champagne, LLC          **LENDER:** Herbert Kimble

By: _____          By: _____

Its Authorized Signatory              Its Authorized Signatory

Address: 9903  S. Santa Monica Blvd, Ste 451    Address:
Email:   MannyHalley@imanimediagroup.com    Email:
Phone:   718 812 7471               Phone:

**PERSONAL GUARANTY:**

In consideration of the loan and of other good and valuable consideration, and in order to induce Lender to extend the Loan to Borrower, I do hereby personally guarantee, absolutely and unconditionally, payment of all liabilities of Borrower to Lender at maturity (including accelerated or extended maturity) and the full and prompt performance of all the terms, conditions, and obligations of the Loan Agreement.

By: _____

Imani Halley

# EXHIBIT "2"

LOAN AGREEMENT

This Agreement is entered into as of March 14, 2023 by and between Claire Kimble, whose business address is 3000 N. Hollywood Way, Suite 101, Burbank, CA 91505 ("Lender") and Faith Media Distribution, LLC whose address is 9903 Santa Monica Blvd., Suite 451, Beverly Hills, CA 90211, with regards to the Lender's advance to Borrower of the Loan (as defined below) in connection with the Borrower's episodic program currently entitled "Angel", episodic program currently entitled "Legacy", program entitled "Soulmates", and program entitled "Dutch 2" (individually and collectively the "Program(s)").

For good and valuable consideration as set forth below, the parties agree as follows:

Loan.  Subject to the terms and conditions contained in this agreement (the "Agreement"), Lender agrees to contribute funds in the form of a loan (the "Loan") to Borrower in the amount of Eight Hundred Thousand US Dollars ($800,000) (the "Principal Amount").

1.      Conditions Precedent.  Lender's obligations hereunder shall be contingent upon (i) the full execution of this Agreement; (ii) full execution of the license agreements between Viacom International, Inc., BET Networks, and BET Streaming LLC (collectively, "Viacom") and Borrower, with respect to the Programs (the "Viacom Agreements") a copy of each program agreement is attached hereto as Exhibit A and incorporated herein; and (iii) full execution of the amendment to the operating agreement of Faith Media Distribution, LLC dated March 14, 2023 attached hereto as Exhibit B.

2.      Disbursement of Loan. Upon satisfaction of the Conditions Precedent, Lender shall deposit the Principal Amount, net of fees (as directed by Borrower), into Borrower's designated bank account, where it will be available for immediate use.

3.      Consideration; Repayment Amount.

        a.      Borrower shall pay the Indebtedness (defined below) to Lender in accordance with the terms hereof, it being understood that such repayment shall be made from any of the Program's license fees due and paid to Borrower pursuant to the Viacom Agreements provided that the Indebtedness must be paid in full no later than six (6) months from the date hereof (the "Maturity Date").  Notwithstanding the foregoing and for the avoidance of any doubt, Borrower shall have the option to repay the Indebtedness at any time from any other funds it elects to use.  Upon repayment of the Indebtedness, Lender hereby agrees to cooperate with Borrower and sign any documents that maybe required by Borrower to confirm the satisfaction of the Loan including but not limited to the Member Resignation Agreement attached hereto as Exhibit C.

        b.      As consideration for the Loan, Lender shall be entitled to an aggregate repayment amount of One Million Two Hundred Thousand US Dollars ($1,200,000) (the "Repayment Amount").  The Repayment Amount is inclusive of the outstanding balance remaining in connection with the loan and promissory note between Herbert Kimble and Champagne, LLC dated January 7, 2022.

1

c.      The Repayment Amount, and any other monetary obligations of Borrower to Lender pursuant to this Agreement (including any unpaid interest or other outstanding charges hereunder), are collectively referred to as the "Indebtedness."

4.      <u>Late Payment Charges</u>. Borrower recognizes and agrees that any default in the payment of any amounts due under this Agreement will result in losses and expenses to Lender which are difficult to quantify. If the Repayment Amount has not been repaid on or before the Maturity Date, Borrower will also pay to Lender a late payment charge equal to five percent (5%) of the then overdue or default amount in question (each a "Late Payment Charge") as a reasonable estimate of Lender's losses and expenses due as a result of the overdue amount. Borrower will pay the Late Payment Charge to Lender within ten (10) business days after Borrower's receipt of the late payment notice referenced above.  The assessment and collection of each Late Payment Charge will be without prejudice to any of Lender's other rights.

5.      <u>Allocation of Gross Revenues; Repayment</u>. Borrower acknowledges and agrees that Lender shall be repaid the Indebtedness from (i) the balance of any of the license fees payable under any of the Viacom Agreements and on the dates such license fees are payable to Borrower as set forth in the Viacom Agreements or (ii) from any money received by Faith Media if the loan is not paid in full by the Maturity Date.

6.      <u>Assignment</u>.  Neither party shall have the right to assign its obligations hereunder without the prior written consent of the other party.

7.      <u>Warranty; Indemnity</u>.  Borrower shall indemnify, defend (at Lender's election), and hold harmless Lender from and against any and all actually suffered losses, obligations, fees, costs, expenses, liabilities, penalties or damages (including, without limitation, reasonable outside attorneys' fees) resulting from third party claims, or complaints arising from or in connection with Borrower's breach of any representation, warranty, covenant or understanding contained in this Agreement, which has been reduced to a final judgement by a court with competent jurisdiction and/or settlement with Borrower's prior written consent.

8.      <u>Notices</u>.  Notices hereunder shall be in writing and sent to the parties at their respective addresses set forth above. A copy of all notices to Borrower shall be sent to: Matthew Middleton at mmiddleton@middletonlawpc.com. Notices may be delivered by personal delivery, email or facsimile, mailing via certified or registered mail or Federal Express. A copy of the notice to Lender shall also be emailed to Kevin Griffo at kevin@urbanflixtv.com.

9.      <u>Confidentiality</u>.  Each party agrees that it shall not directly or indirectly disclose, furnish or otherwise make available to any third party or utilize for its own benefit any non-public or proprietary information relating to this Agreement or the other party's business. In addition, Lender agrees that Lender shall not directly or indirectly disclose, furnish or otherwise make available to any third party any non-public or proprietary information relating to the Program and the budget, cast, crew, story, Screenplay, marketing and/or distribution plan in connection

therewith. The foregoing shall not apply to information that: (a) has been approved for release by the written authorization of the non-disclosing party; (b) is or becomes part of information in the public domain through no fault of the disclosing party; or (c) properly comes into the possession of the disclosing party from a third party which is not under any obligation known to such disclosing party to maintain the confidentiality of such information. Each party may disclose such information pursuant to a judicial or other government order; provided that the disclosing party shall provide the non-disclosing party with prompt written notice prior to any disclosure so that the non-disclosing party may seek legal remedies to maintain the confidentiality of such information and the disclosing party shall comply with any applicable protective order or the equivalent.

10.    <u>Representations and Warranties</u>. Borrower further represents and warrants the following (which representations and warranties will survive any expiration or termination of this Agreement): (a) Borrower is a limited liability company in good standing duly organized and existing under the laws of its jurisdiction of formation; (b) Borrower has the power and authority to execute, deliver and carry out the terms and provisions of this Agreement and to execute and delivery all documents, instruments and agreements to be executed and delivered by Borrower under this Agreement; (c) Neither the execution and delivery of this Agreement or any other document, instrument or agreement to be executed pursuant to this Agreement, nor the consummation of the transactions contemplated by this Agreement, nor compliance with the terms and provisions of this Agreement or any other instrument, agreement or document executed in connection with this Agreement will violate any provision of any applicable law or regulation; (d) Borrower has or will acquire the rights in and to all literary, musical and dramatic material contained in the Programs, and Borrower has or will enter into all agreements and contracts with actors, directors, producers, writers and others rendering services or supplying materials in connection with the development, production and exploitation of the Program and all customary rights therein, including without limitation all ancillary, allied, and derivative rights in order for the Programs to be distributed and exploited in any and all media whether now known or hereafter devised throughout the world in perpetuity, subject to customary industry parameters; (e) Neither the Program nor any part thereof, nor the exercise by any authorized party of any right granted to Lender hereunder will violate or infringe the copyright, literary, dramatic, personal, private, or civil or property rights, or rights of privacy, or any other rights of any third party. All agreements entered into by Borrower with third parties shall contain terms consistent with the provisions hereof, including, without limitation, a "work-for-hire" provision, waiver of injunctive relief, a strict confidentiality and no publicity clause, and appropriate warranties of originality and indemnities; and (f) There are no actions, suits or proceedings, pending or threatened, or liens, claims or encumbrances (other than customary union/guild liens) which might conflict with or otherwise affect any of the provisions of this Agreement or Borrower's promotion or exploitation of the Programs in any and all media whether now known or hereafter devised throughout the world and in perpetuity.

11.    <u>Borrower's Default</u>. In the event that (i) Borrower breaches or defaults under any material term, provision, covenant, condition, agreement or obligation contained in this Agreement or the Viacom Agreements, and such breach or act or omission is not cured within ten (10) business days' of Lender's written notice thereof (if, in Lender's judgment, such breach or act or omission is curable); (ii) a breach or default occurs under any of the Viacom Agreements or any of the Viacom

Agreements are terminated, cancelled, or otherwise expire; or (iii) Borrower or Viacom attempts to make an assignment for the benefit of creditors, enters into liquidation or dissolution, initiates or is subject to reorganization proceedings, or files a petition in bankruptcy or becomes insolvent or is unable to meet its debts, or a trustee or receiver is appointed for Borrower or Viacom or a substantial part of Borrower's or Viacom's assets, whether by voluntary act or otherwise, or any proceeding is instituted by or against Borrower or Viacom under the provisions of any bankruptcy act or amendment thereto or Borrower or Viacom enters into a voluntary arrangement with its creditors, then Lender may, at Lender's election, without limiting any other rights or remedies available to it in law or equity, cause the Indebtedness to become immediately due and payable; and/or in addition, avail itself of the rights and remedies provided for in this Agreement and any other rights and remedies as may be provided by law or in equity. In addition, Borrower shall be responsible for Lender's verifiable and documented costs and reasonable attorney's fees in connection with the enforcement of this Agreement and/or any of Lender's rights pursuant to the terms of this Agreement.

12.     <u>Miscellaneous</u>.  It is expressly understood, agreed and covenanted that the parties do not by this Agreement intend to form an employment relationship between them, and in no event shall this Agreement be construed to constitute such an employment relationship.  This Agreement is not for the benefit of any third party and shall not be deemed to give any right or remedy to any third party, whether referred to herein or not.  The parties agree that this Agreement shall be governed by the laws of the State of New York applicable to agreements entered into and wholly performed therein without regard to its choice of law provisions.  Lender agrees that under no circumstances including, without limitation, in the event of any breach or default or any alleged breach or default by Borrower, shall Lender have the right to obtain equitable or injunctive relief or to rescind, terminate or enjoin the development, production, distribution or other exploitation of the Program, it being agreed that money damages at law shall be a suitable remedy. This Agreement may be executed in counterparts, or by facsimile or PDF, which shall not affect its validity.

IN WITNESS WHEREOF, the undersigned have executed this Agreement on the date first set forth above.

Faith Media Distribution, LLC

By: _____
      *Yolanda Halley*
      Authorized signature

Lender

By: _____
      *Claire Kimble*
      Claire Kimble

DocuSign Envelope ID: 76AABCB9-DBD9-4389-85C5-9C802D66E0FD

Personal Guaranty:

In consideration of the loan and other good and valuable consideration, and in order to induce Lender to extend the loan to Borrower, I do hereby personally guarantee, absolutely and unconditionally, payment of all liabilities of Borrower to Lender at maturity (including accelerated or extended maturity) and the full and prompt performance of all terms, conditions and obligations of this Loan Agreement.

By: 
    _____
    E020D92361F3443...
    Yolanda Halley

By:
    _____
    Imani Halley
    3EA39A4A2F1E414...
    Imani Halley

5

EXHIBIT A

Viacom Agreements

1.  Angel Program License Agreement with Viacom dated November 18, 2022.  This program
    has been delivered to Viacom and the outstanding balance due from Viacom is $225,000.

2.  Legacy Program License Agreement with Viacom dated October 25, 2022.  This program is
    scheduled to be delivered on or about March 1, 2023 and the outstanding balance due from
    Viacom is $225,000.

3.  Dutch 2 Program License Agreement with Viacom dated February 9, 2022.  This program is
    scheduled to be delivered on or about April 1, 2023 and the minimum outstanding balance
    due from Viacom is $110,000 ($450,000 if non-theatrical option is exercised).

4.  Soulmates Program License Agreement with Viacom dated September 1, 2022. This program
    is scheduled to be delivered on or about April 15, 2023 and the outstanding balance due from
    Viacom is $1,125,000 (with $750,000 due upon delivery & acceptance).

Exhibit B

Amendment to Operating Agreement of Faith Media Distribution, LLC

Exhibit C

Member Resignation Agreement

# EXHIBIT "3"

DocuSign Envelope ID: 76AABCB9-BBD9-4389-85C5-9C802D66E0FD

Amendment to Operating Agreement
of
Faith Media Distribution, LLC

As of March 14, 2023

Reference is hereby made to the Operating Agreement of Faith Media Distribution, LLC, a California Limited Liability company ("Company") dated January 25, 2021 (the "Operating Agreement").

## RECITALS

**WHEREAS,** the Company was formed under the California Liability Company Law (the **"Act"**), on January 26, 2021, as a single member LLC for the purposes and on the terms and conditions set forth in the Operating Agreement.

**WHEREAS**, the Company is concurrently entering into a loan agreement with Claire Kimble dated on or about March 14, 2023 ("Loan") secured by payments due to Company from Company's license agreements with Viacom International, Inc. for the titles (i) "Angel", (ii) "Dutch 2", (iii) "Soulmates", and (iv) "Legacy" ("Viacom Agreements").

WHEREAS, Company now desires to add Claire Kimble ("Kimble") as a Member of Company.

**NOW, THEREFORE,** in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, when signed by the authorized parties below, the following will constitute the agreement to modify the Operating Agreement as hereinafter provided. All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Operating Agreement.  The parties hereby agree as follows:

1. "Member" – The term "Member" shall be defined as Yolanda Halley, an individual, and Claire Kimble, an individual.

2. Paragraph 8 of the Operating Agreement shall be deleted and replaced with the following: "Membership Interest" or **"Interest"** shall mean the entire interest of a Member in the Company, as provided in this Agreement or by applicable law, and all rights, powers, duties and obligations of such Member in and with respect to the Company, including without limitation, the Member's interest in Company net income, losses and distributions of available cash. The names of the Members are as set forth in Exhibit A to this Agreement.  The Manager shall cause Exhibit A to be updated from time to time, as necessary, including in order to reflect the admission and/or removal of Members and the issuance of Membership

1

Interests in accordance with the terms of this Agreement."

3.      Paragraph 12 of the Operating Agreement shall be deleted and replaced with the following: "Withdrawal of Capital.  Company will instruct Viacom to make all payments in connection with the Viacom Agreements into a bank account that Company controls at JP Morgan Chase Bank.  The name of the designated account is Dynasty Inc and the account number is 709753062. Company shall add Kimble or Kimble's designated person ("Kimble Designee") to this  account as an authorized signer but such designee shall not have the authority to conduct any transasctions without the express consent of Halley except as provided hereinbelow. As of the date hereof until the repayment of the Loan in full, Kimble Designee shall have the right to withdraw funds deposited from any of the Viacom Agreements from the Company bank account after providing the prior written notice to Halley.  If the Loan is not repaid in full as of the Maturity Date, neither Halley nor Kimble Designee shall withdraw any funds outside of the Viacom funds without the express written consent of both Members.

4.      Paragraph 16 of the Operating Agreement shall be modified by inserting the following first sentence: "Distributions.  Distribution of all cash flow into the Company bank account from Viacom shall be directed to the repayment of the Loan until the Loan is satisfied in full.  Notwithstanding the foregoing, if the Loan has not been repaid by the Loan Maturity Date then any cash flow received from any sources will be used to pay off the Loan.  As of the date of the Loan, there shall be no amendments to any of the Viacom Agreements and/or any change in payment direction from any of the Viacom Agreements unless authorized by both Members."

5.      Except as expressly set forth herein, all terms and conditions of the Operating Agreement are hereby ratified and confirmed and shall remain in full force and effect.

If the foregoing is acceptable, please acknowledge the same by signing in the appropriate places below.

ACCEPTED AND AGREED TO:

Member

_____
Yolanda Halley

_____
Claire Kimble

2

DocuSign Envelope ID: 76AABCB9-DBDD-4389-85C5-9C802D66E0FD

**EXHIBIT A**

# Members
## of
# Faith Media Distribution, LLC

| Name and Address | Capital Contribution | Percentage Interest |
|---|:---:|:---:|
| Yolanda Halley<br>[address] | $0 | 50% |
| Claire Kimble<br>[address] | $0 | 50% |
| **Total** | **$100** | **100%** |

# EXHIBIT "4"



**California Secretary of State**
Electronic Filing



**FILED**
Secretary of State
State of California

## LLC Registration – Articles of Organization

|  |  |
|---|---|
| Entity Name: | Faith Media Distribution, LLC |

|  |  |
|---|---|
| Entity (File) Number: | 202102911017 |
| File Date: | 01/26/2021 |
| Entity Type: | Domestic LLC |
| Jurisdiction: | California |

Detailed Filing Information

1. Entity Name:

   Faith Media Distribution, LLC

2. Business Addresses:

   a. Initial Street Address of Designated Office in California:

      10960 Wilshire Blvd., 5th Floor
      Los Angeles, California 90024
      United States

   b. Initial Mailing Address:

      10960 Wilshire Blvd., 5th Floor
      Los Angeles, California 90024
      United States

3. Agent for Service of Process:

   ERESIDENTAGENT, INC. (C2702827)

4. Management Structure:

   One Manager

5. Purpose Statement:

   The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

Electronic Signature:

The organizer affirms the information contained herein is true and correct.

Organizer:

Erika Easter